Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTON VOZNESENSKY, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SCHWEITZER-MAUDUIT INTERNATIONAL, INC., JOHN D. ROGERS, DEBORAH BORG, MARK BYE, JEFFREY KEENAN, JEFFREY KRAMER, MARCO LEVI, KIMBERLY E. RITRIEVI, and ANDERSON D. WARLICK, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Anton Voznesensky ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**<u>NATURE OF THE ACTION</u>**

1.     This is an action against Schweitzer-Mauduit International, Inc. ("SWM" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of SWM and Neenah, Inc. ("Neenah").

2.      On May 18, 2022, Defendants caused to be filed with the SEC Amendment No. 1 to Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

3.      The Registration Statement, which recommends that SWM shareholders vote in favor of, among other things, the issuance of SWM common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) SWM's and Neenah's financial projections; (ii) the financial analyses performed by SWM's financial advisor, J.P. Morgan Securities, LLC ("J.P. Morgan"), in connection with its fairness opinion; (iii) potential conflicts of interest involving J.P. Morgan; and (iv) potential conflicts of interest involving Company insiders.

4.      These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the June 29, 2022 shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

9. Plaintiff is, and has been at all relevant times hereto, an owner of SWM common stock.

10. Defendant SWM, together with its subsidiaries, provides engineered solutions and advanced materials for various industries worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SWM."

11. Defendant John D. Rogers ("Rogers") is Chairman of the Board of the Company.

12. Defendant Deborah Borg ("Borg") is a director of the Company.

13. Defendant Mark Bye ("Bye") is a director of the Company.

14. Defendant Jeffrey Keenan ("Keenan") is a director of the Company.

15. Defendant Jeffrey Kramer ("Kramer") is Chief Executive Officer and a director of the Company.

16.     Defendant Marco Levi ("Levi") is a director of the Company.

17.     Defendant Kimberly E. Ritrievi ("Ritrievi") is a director of the Company.

18.     Defendant Anderson D. Warlick ("Warlick") is a director of the Company.

19.     Defendants Rogers, Borg, Bye, Keenan, Kramer, Levi, Ritrievi, and Warlick are collectively referred to herein as the "Individual Defendants."

20.     Defendants SWM and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

21.     On March 28, 2022, SWM and Neenah announced that they had entered into a definitive agreement to combine in an all-stock merger. Under the terms of the agreement, Neenah shareholders will receive 1.358 shares of SWM common stock for each share of Neenah common stock owned. Following the closing of the Proposed Transaction, SWM shareholders will own approximately 58% of the combined company, and Neenah shareholders will own approximately 42% of the combined company, in each case, on a fully diluted basis. The press release announcing the Proposed Transaction states, in pertinent part:

**SWM and Neenah to Combine in All-Stock Transaction to Create a ~$3 Billion Global Leader in Specialty Materials**

- Positioned to Better Serve Customers with Leading Technologies, Innovation, and Global Scale
- Expect at Least $65 Million in Annual Run-Rate Cost Synergies Achieved in 24-36 Months
- Complementary High-Growth Product Portfolios to Accelerate Revenue Opportunities
- Combined Company to Have Strong Financial Profile with Additional Flexibility
- Companies to Host Conference Call Today at 8:30 a.m. ET

March 28, 2022 07:00 AM Eastern Daylight Time

ALPHARETTA, Ga.--(BUSINESS WIRE)--Schweitzer-Mauduit International, Inc. (NYSE: SWM) ("SWM") and Neenah, Inc. (NYSE: NP) ("Neenah"), two leading global manufacturers of specialty materials, today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals with combined revenues of approximately $3 billion, expanded scale and capabilities, and accelerated growth opportunities.

This transaction brings together two organizations with highly complementary technologies, geographies and product portfolios in specialty materials. The combined company will capitalize on powerful megatrends with strong positions in large, growing categories including Filtration, Healthcare & Wellness, Protective & Adhesive Solutions, Industrial Solutions, and Packaging & Specialty Paper.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, shareholders of Neenah will receive 1.358 shares of SWM common stock for each share of Neenah common stock owned. Following the closing of the transaction, SWM shareholders will own approximately 58 percent of the combined company, and Neenah shareholders will own approximately 42 percent of the combined company, in each case, on a fully diluted basis.

\*      \*      \*

**Headquarters, Leadership and Governance**

The combined company will remain headquartered in Alpharetta, Georgia and will be led by a proven management team that reflects the strengths and capabilities of both organizations. Upon close, Julie Schertell, President and Chief Executive Officer of Neenah, will serve as President and Chief Executive Officer of the combined company. Dr. Jeff Kramer, Chief Executive Officer of SWM, will serve as a strategic advisor for the combined company following the close of the transaction. A new name for the combined company will be selected in connection with the merger.

The new Board will consist of nine directors, five of whom will be from the SWM Board and four of whom will be from the Neenah Board, including Ms. Julie Schertell. John D. Rogers, Non-Executive Chairman of the SWM Board, will serve as Non-Executive Chair of the combined company's Board of Directors.

**Approvals and Closing**

The transaction has been unanimously approved by the Boards of Directors of both SWM and Neenah. The merger is expected to close in the second half of 2022, subject to Neenah and SWM shareholder approval, regulatory approvals and other customary closing conditions.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor and King & Spalding LLP is serving as legal advisor to SWM. Perella Weinberg Partners LP is serving as financial advisor and Bryan Cave Leighton Paisner LLP is serving as legal advisor to Neenah. Cravath, Swaine & Moore LLP is serving as legal advisor to the independent members of the Neenah Board of Directors.

\*     \*     \*

**About SWM**

Schweitzer-Mauduit International, Inc., operating as SWM International, is a leading global performance materials company, focused on finding ways to improve everyday life by bringing best-in-class innovation, design, and manufacturing solutions to our customers. Our highly engineered films, adhesive tapes, foams, nets, nonwovens, and papers are designed and manufactured using resins, polymers, and natural fibers for a variety of industries and specialty applications. SWM and its subsidiaries manufacture on four continents, conduct business in over 90 countries and employ approximately 5,000 people worldwide. For further information, please visit SWM's website at www.swmintl.com.

**About Neenah, Inc.**

Neenah is a leading global manufacturer of specialty materials serving customers across six continents, with headquarters in Alpharetta, Georgia. We are focused on growing in filtration media, specialty coatings, engineered materials and imaging & packaging. Our materials are in various products used every day, such as transportation and water filters, premium packaging of spirits, technology and beauty products, industrial labels, tapes and abrasives, and digital printing for high-end apparel. To learn more, please visit www.neenah.com.

**B.   The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Registration Statement omits and/or misrepresents material information concerning: (i) SWM's and Neenah's financial projections; (ii) the financial analyses performed by J.P. Morgan in connection with its fairness opinion; (iii) potential conflicts of interest involving J.P. Morgan; and (iv) potential conflicts of interest involving Company insiders.

23.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) SWM's Reasons for

the Merger; Recommendation of SWM's Board of Directors; (ii) Opinion of SWM's Financial Advisor; and (iii) Certain Unaudited Prospective Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the June 29, 2022 shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning SWM's and Neenah's Financial Projections

25.     The Registration Statement omits material information concerning SWM's and Neenah's financial projections.

26.     With respect to SWM's and Neenah's financial projections, the Registration Statement fails to disclose: (1) all line items underlying SWM's and Neenah's financial projections; (2) SWM's and Neenah's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of SWM and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of SWM and the combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

28.     When a company discloses non-GAAP financial metrics in a Registration

Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning J.P. Morgan's Analyses

30.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan.

31.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*" of SWM: (1) the unlevered free cash flows that SWM is expected to generate during the second half of fiscal year 2022 ***through fiscal year 2031***, and all underlying line items; (2) the terminal values of SWM; and (3) the individual inputs and assumptions underlying the perpetual growth rates and discount rates used in the analysis.

32.     The Registration Statement fails to disclose the following concerning J.P. Morgan's

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 18, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Discounted Cash Flow Analysis*" of Neenah: (1) the unlevered free cash flows that Neenah is expected to generate during the second half of fiscal year 2022 ***through fiscal year 2031***, and all underlying line items; (2) the terminal values of Neenah; and (3) the individual inputs and assumptions underlying the perpetual growth rates and discount rates used in the analysis.

33.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Neenah Analyst Price Targets*" analysis: (1) the individual price targets observed by J.P. Morgan in its analysis; and (2) the sources thereof.

34.     The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

35.     Without the information described above, the Company's shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving J.P. Morgan

36.     The Registration Statement omits material information concerning potential conflicts of interest involving J.P. Morgan.

37.     The Registration Statement provides that, "J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of SWM and Neenah, for which it receives customary compensation or other financial benefits . . . [and that] J.P. Morgan anticipates that it and its affiliates will arrange and/or provide financing to SWM in connection

with the merger for customary compensation." The Registration Statement, however, fails to disclose the amount of compensation J.P. Morgan received or expects to receive in connection with providing such services. *See Ortsman v. Green*, 2007 WL 702475, at *1-2 (Del. Ch. Feb. 28, 2007) (ordering expedited discovery where plaintiff alleged "colorable disclosure claims" concerning omission of information relating to financial advisors' conflicted roles in the deal having attempted to provide financing to buyers, as well as failing to disclose amount of fees received by advisor from the company, buyer, and members of buyer group).

38.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.  Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

40.     The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

41.     The Registration Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

42.     Any communications regarding post-transaction employment during the

10

negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to

vote on the Proposed Transaction and Stock Issuance.

48.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49.    Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

50.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 18, 2022                           Respectfully submitted,

                                              **HALPER SADEH LLP**

                                              By: /s/ Daniel Sadeh
                                              Daniel Sadeh, Esq.
                                              Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                              667 Madison Avenue, 5th Floor
                                              New York, NY 10065
                                              Telephone: (212) 763-0060
                                              Facsimile: (646) 776-2600
                                              Email: sadeh@halpersadeh.com
                                                       zhalper@halpersadeh.com

14

*Counsel for Plaintiff*